IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

───────────────────────────────

TINA LASHER,

                     Plaintiff,           Civil Action No.
                                       1:11-CV-0777 (DEP)
     v.

COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.

───────────────────────────────

APPEARANCES:                   OF COUNSEL:

FOR PLAINTIFF

MARGOLIUS LAW FIRM        PETER M. MARGOLIUS, ESQ.
7 Howard Street
Catskill, New York 12414

FOR DEFENDANT

HON. RICHARD S. HARTUNIAN    MARIA FRAGASSI
United States Attorney for the     SANTENGELO, ESQ.
Northern District of New York     Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF REGIONAL GENERAL   MARY ANN SLOAN, ESQ.
COUNSEL                        Acting Regional Counsel
Social Security Administration
26 Federal Plaza              NOAH M. SHABACKER, ESQ.
New York, NY 10278-0004      Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse determination by the Commissioner, pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1]  Oral argument was conducted in connection with those motions on March 19, 2012 during a telephone conference which was both digitally recorded, and at which a court reporter was also present.  At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's decision did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in her appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is

---

[1]      This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

incorporated herein by reference, it is hereby

ORDERED, as follows:

1)    Plaintiff's motion for judgment on the pleadings is GRANTED.

2)    The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3)    The matter is hereby REMANDED to the Commissioner, with a directed finding of disability, for a calculation of benefits owing to the plaintiff.

4)    The clerk is directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated:     March 28, 2012
           Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
TINA LASHER,

      Plaintiff,

vs.         11-CV-777

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.
-------------------------------------------x

   Transcript of *Telephone Conference* held on

March 19, 2012, at the James Hanley Federal Building,

100 South Clinton Street, Syracuse, New York, the

HONORABLE DAVID E. PEEBLES, Magistrate-Judge, Presiding.

     A P P E A R A N C E S

For Plaintiff:  OFFICE OF PETER M. MARGOLIUS
       Attorney at Law
       7 Howard Street
       Catskill, New York 12414
        BY:  PETER M. MARGOLIUS, ESQ.
         JANICE CAMMARATO, ESQ.


For Defendant:  SOCIAL SECURITY ADMINISTRATION
       Office of Regional General Counsel
       26 Federal Plaza
       New York, New York 10278
        BY:  NOAH M. SCHABACKER, ESQ.

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13260*
*(315)234-8546*

1                    THE CLERK:  This is Shelly with Judge Peebles

2    chambers, recording this conference call.  Case is Tina

3    Lasher versus Commissioner of Social Security; 11-cv-777.

4    Counsel, can you please note your appearances for the record?

5                    MR. MARGOLIUS:  Peter M. Margolius, attorney

6    for appellant, with Janice Cammarato.

7                    MR. SCHABACKER:  This is Noah Schabacker, the

8    attorney for the Social Security Administration.

9                    THE COURT:  Good afternoon, Counsel.

10   Mr. Margolius, can you spell Janice's last name one more time

11   for our court reporter?

12                   MR. MARGOLIUS:  C-A-M-M-A-R-A-T-O.

13                   THE COURT:  Thank you.

14                   I have before me cross-motions, in essence,

15   for judgment on the pleadings in connection with this Social

16   Security appeal under Section 205(g) of the Act.

17   Mr. Margolius, speaking very slowly, is there anything you

18   would like to add to the materials and arguments set forth in

19   your brief?

20                   MR. MARGOLIUS:  Your Honor, this is not really

21   part of an argument, but I don't know if you're aware of this

22   or not or should be, but the claimant applied again after the

23   Administrative Law Judge's decision, and without going to

24   hearing was granted benefits as of the day after the Judge's

25   decision.  So, the claimant was granted Social Security

1   Disability, we're talking about the period up to the date of

2   the Judge's decision as of right now, I believe.

3              THE COURT:  Do you contend that that fact

4   should be considered by the Court in deciding this appeal?

5              MR. MARGOLIUS:  I don't -- I don't know.  I

6   don't know if you're aware of it or shouldn't be, maybe you

7   shouldn't be aware of it.  But no, I don't see how that given

8   a different level, it was the same evidence, but your

9   decision is your decision, you know.

10             THE COURT:  Right.  And, of course, the agency

11  may have had additional information.  It clearly had

12  Dr. Whipple's information, the October 19, 2010 letter, which

13  post-dated the Administrative Law Judge's decision.

14             MR. MARGOLIUS:  Right.  And that's an issue

15  here today.

16             THE COURT:  I know it is.  All right.

17  Anything else you would like to add before I turn the floor

18  over to Mr. Schabacker?

19             MR. MARGOLIUS:  No, sir.  I think it's all set

20  out in our brief.  Thank you.

21             THE COURT:  Mr. Schabacker, anything you would

22  like to point out on behalf of the Commissioner?

23             MR. SCHABACKER:  Thank you, Your Honor, yes.

24  I would like to make three brief points.  The first is that

25  the additional evidence that claimant submitted doesn't

4

1  change the fact that she wasn't disabled prior to the

2  Administrative Law Judge's decision.  The subsequent evidence

3  from Dr. Whipple was written eight months after the ALJ's

4  February 2010 decision.  He didn't provide any new or

5  supplemental opinion evidence.  He didn't make any additional

6  conclusions about the relevant period.  And he didn't change

7  his previous finding that plaintiff didn't have any

8  restrictions on the use of her right arm.

9              Secondly, I would like to point out that the

10  Administrative Law Judge properly assessed the weight to be

11  given to the treating physician opinions in the record.

12              Now, plaintiff made quite a bit -- put a large

13  amount of weight on Dr. Danisi's statement of disability, but

14  Dr. Danisi's statement of disability wasn't supported by the

15  objective medical evidence, and was actually contradicted by

16  his own internally inconsistent assessments of plaintiff.

17  And just from a legal standpoint, I would like to point out

18  that these statements of disability by a treating source,

19  it's the Commissioner who makes the decision, the ultimate

20  decision about whether a claimant is disabled, and the

21  treating source's statement on that matter is not binding on

22  the Commissioner.

23              Secondly, the Northern District precedent

24  establishes -- and I'll point out here that Dr. Danisi's

25  statement of disability was for purposes of a Workers'

1   Compensation claim.  Northern District precedent is clear

2   that in such cases, because the statements are given for

3   claims that are handled under different standards, and also

4   because Workers' Compensation assessments are backward

5   looking to the employee's previous job, they don't apply for

6   Social Security Disability cases.

7            And then factually, Dr. Danisi's objective

8   findings don't support the conclusions.  And, in fact, his

9   objective findings are internally inconsistent in his

10  statement of disability.  It was internally inconsistent on

11  January 2009 he indicated that plaintiff couldn't sit, stand

12  or walk at work and couldn't lift any weight, reach below her

13  waist and could never climb, stoop, kneel, crouch, or crawl.

14  But at the same time she could occasionally drive and balance

15  and reach above her shoulder and work at desk and waist level

16  and handle with her right and left hand and with her fingers.

17            So, just to be clear here, apparently she can

18  drive but she can't sit.  His assessment doesn't make any

19  sense on its own terms.

20            And then compared to his own assessments, he

21  didn't base his statement of disability on objective evidence

22  in the record.  In October he assessed that she had good

23  strength and intact sensation throughout her body.  In

24  November of 2008 EMG results on her right arm were normal,

25  but he still said that she was disabled.  And in January 2009

1  Dr. Danisi didn't even examine plaintiff.  And she denied any

2  weakness.  But again he said that she was disabled.

3              So, we would submit that Dr. Danisi's

4  statement of disability, the ALJ assessed it properly and

5  gave it very little weight.

6              And the other evidence in the record shows

7  that plaintiff wasn't disabled.  Dr. Balagtas' consultative

8  examination from November 2008 showed that plaintiff had

9  normal hand and finger dexterity and strength.  Treating

10  physician Dr. Burdick concluded in March of 2009 that

11  plaintiff had no loss of use of her right arm.  And

12  Dr. Whipple observed again that the only limit on the use of

13  her right arm was some decreased sensation in her palm.  And

14  the same doctors, as well as Dr. Aboelsaad, all found that

15  plaintiff could walk normally.

16              THE COURT:  Did you say that -- I'm sorry to

17  interrupt.  Did you say that Dr. Danisi did not examine the

18  plaintiff in January of 2009?  Because I see a visit of

19  January 8, 2009, and another January 20, 2009, at pages 227

20  through 30 of the administrative transcript.

21              MR. SCHABACKER:  Yes, Your Honor.  At that

22  visit, if you read through it, while she visited, there is no

23  indication that he performed any sort of physical evaluation

24  of plaintiff's ability to move her arms or legs or anything

25  like that.  Looking at page 228 of the record, he records

1    that plaintiff complained that she couldn't afford some of

2    her medicine and also recorded some complaints of hers.  But

3    as you follow along on page 229, he didn't fill out any of

4    the assessment boxes on the actual examination.  And, again,

5    down at the bottom he just lists a plan; he doesn't, again,

6    have any sort of objective evaluation of her.  And in point

7    number three on that is that she is totally disabled, despite

8    the fact that he didn't perform any sort of physical

9    evaluation.

10                THE COURT:  All right.  Sorry I interrupted.

11   Did you have another point to make?

12                MR. SCHABACKER:  Yes, Your Honor.  I just

13   wanted to finish by saying that, you know, this recording of

14   plaintiff's subjective complaints leads to my third point,

15   which is that the Administrative Law Judge properly assessed

16   plaintiff's subjective complaints as not entirely credible.

17   And the thing I want to start out with is that plaintiff

18   stopped working because -- she stated that she stopped

19   working because her employer took away a stool that she was

20   using at work.  But as I reviewed the objective evidence from

21   her physicians, she didn't have impairments that were as

22   severe as she claimed.  But even her own statements in her

23   application materials and at the hearing, she said that she

24   could perform a wide range of daily activities.  She washed

25   dishes, washed and folded laundry, she went out with her

1    husband, she shopped, cleaned, cooked.  She was able to

2    perform all of these activities of daily living.  And so even

3    on her own statements she wasn't as impaired as she claimed

4    she was.

5                  I'll also address just very briefly that in

6    plaintiff's brief she claimed that the ALJ made an adverse

7    credibility finding based on her failure to follow prescribed

8    treatment.  Now, there is two things going on here.  First,

9    under Social Security Ruling 96-7p, it's perfectly

10   appropriate for the Administrative Law Judge to assess -- to

11   assess someone's credibility based on whether or not they

12   follow prescribed treatment.  Secondly, even if you look at

13   the Administrative Law Judge's decision, you will see that he

14   considered her failure to follow prescribed treatment in

15   assessing whether her impairments were severe within the

16   meaning of the Act and not as part of the credibility

17   determination.

18                  On transcript page 14, that's where he looks

19   at whether or not her impairments were severe, and that's

20   where the Administrative Law Judge discusses the failure to

21   follow prescribed treatment.  Following on transcript pages

22   15 through 18, separate section, is where he considers

23   plaintiff's credibility.

24                  And, finally, plaintiff raised the issue of

25   the ALJ considering her use of Hydrocodone, which she claimed

1    she used only when the pain became essentially unbearable.

2    And plaintiff took issue with the Judge's reference to this

3    because she claimed at the hearing for the first time that

4    she experienced some side effects from this medication.  But

5    examining the record, it's recorded in two places, transcript

6    page 182 and transcript page 204, that plaintiff's physician

7    reviewed her use of this medication and she never mentioned

8    any side effects.  So, again, the Judge was perfectly

9    entitled to use this in evaluating plaintiff's credibility.

10               In closing, Your Honor, the agency submits

11   that the evidence clearly shows that plaintiff was not

12   disabled at the time of the Administrative Law Judge's

13   decision and, therefore, she's not entitled to benefits.

14               MR. MARGOLIUS:  May I respond, Your Honor?

15               THE COURT:  Yes, Mr. Margolius.

16               MR. MARGOLIUS:  I'm just going to respond to

17   one point.  The ALJ, who I've known for many years, okay, he

18   is generally a fair person, but he may have warranted a very

19   unfair assessment here.  I'm assuming he made it by accident.

20   And my colleague just argued the same point, treated

21   unfairly.  The ALJ and my learned colleague have relied upon

22   the fact that claimant did not follow through on treatment.

23   That's absolutely correct.  But she did not follow through on

24   treatment until payment for such treatment was approved by

25   the Workers' Comp. Board and the insurance company and she

1    was allowed to have it.  Once treatment was approved and paid

2    for, she had it.  She couldn't afford to have it before it

3    was approved, and I don't think that should be held against

4    her.  And the ALJ did and my colleague had just compounded

5    that argument.  I don't think that should be held against her

6    in not having treatment.  Thank you, Your Honor.

7                MR. SCHABACKER:  May I respond, Your Honor?

8                THE COURT:  Yes.

9                MR. SCHABACKER:  Thank you very much.  Once

10   again, Your Honor, if you look at the decision, the

11   Administrative Law Judge did not, in fact, hold plaintiff's

12   failure to follow prescribed treatment against her.  He

13   didn't consider it in his credibility determination.  So,

14   plaintiff's argument on that point is addressing something

15   that's not even in the record.  It's simply not there and

16   it's simply not a basis to overturn the decision.

17              MR. MARGOLIUS:  You just argued yourself

18   saying that she didn't go through treatment.  Where is it in

19   here?  I don't know how you count it for credibility but you

20   count it for something else, didn't promptly take advantage

21   of treatment.  Well, she didn't take advantage of treatment

22   until it was paid for.

23              THE COURT:  I think I understand the arguments

24   on both sides of that issue.  I'll have to let that be the

25   last word.

1            Let me lay some background as a backdrop for

2    my decision.   The plaintiff applied for disability insurance

3    benefits under the Act.   After the initial denial of that

4    application, a hearing was conducted by Administrative Law

5    Judge Carl Stephan, resulting in a written decision issued on

6    February 12, 2010.

7            In his decision the Administrative Law Judge,

8    or ALJ, went through the now familiar five-step test for

9    determining disability.   At Step One he concluded that

10   plaintiff had not engaged in substantial gainful activity

11   since her alleged onset date.   At Step Two he found that she

12   suffers from severe impairments within the meaning of the Act

13   and the corresponding regulations, including lumbar spine

14   disorder, cervical spine disorder, and restless leg syndrome.

15   But concluded at Step Three that none of those met or

16   medically equaled any of the listed presumptively disabling

17   impairments set forth in the regulations.

18           He then surveyed the medical evidence and

19   determined that plaintiff, despite her condition, retains the

20   residual functional capacity, or RFC, to perform a full range

21   of light work as defined under the regulations.   In arriving

22   at that determination, he rejected opinions contrary to his

23   findings of two treating sources and rejected plaintiff's

24   subjective complaints concerning her limitations.

25           He then concluded at Step Four that she is

1   capable of performing her past relevant work as a cashier,

2   but went on, in any event, to conclude that consideration of

3   the medical vocational guidelines, or the Grid, would in

4   light of her relevant characteristics and the ALJ's RFC

5   finding support a finding of no disability.

6            My function is to review that determination

7   which became final and the Social Security Administration

8   appeals council denied review, whether it is the result of

9   the application of proper legal principles and is supported

10  by substantial evidence.

11           The first issue raised by the claimant, or

12  plaintiff in this case, concerns the October of 2010 findings

13  or letter from Dr. Richard Whipple concerning plaintiff's

14  right arm and elbow.  It is being advanced by the plaintiff

15  as new and material evidence which should be considered by

16  the Court.

17           As you know, under the regulations and at

18  least in this circuit, evidence is new if it is not merely

19  cumulative of what is already in the record, and is material

20  if it is both relevant to the claimant's condition during the

21  time period for which benefits have been denied, that is the

22  period on or before the ALJ's decision, and probative,

23  meaning that there is a reasonable probability that the new

24  evidence would have influenced the Commissioner to decide

25  claimant's application differently.

1    There are many, many cases that support that

2  proposition.  The leading is probably *Pollard against Halter*,

3  recorded at 377 F.3d 183.  It's a Second Circuit decision

4  from 2004.  More recently the same principle annunciated in

5  *Sergenton v. Barnhart*, 470 F.Supp.2d 194, Eastern District of

6  New York reported decision from 2007.

7    Close case, but I do think if you look at

8  Dr. Whipple's letter, it is new, it is not cumulative.  I

9  think it is probative and could well have influenced the

10  ALJ's decision.  It reports of an MRI scan that was performed

11  once it finally apparently was approved, and it showed that

12  she has lateral epicondylitis and partial tearing of the

13  extensors, as well as some thickening of the collateral

14  ligament laterally, although with no definitive tear.

15    And although one could surmise I think the

16  lack of -- the fact of the plaintiff's May 2008 accident

17  involving her right arm and the lack of any evidence that the

18  condition was deteriorating suggests to me that this is

19  relevant to the plaintiff's condition at the time prior to

20  the ALJ's decision, and I think it could have influenced the

21  ALJ's decision in this case.  To me the more problematic part

22  of the ALJ's decision is his rejection of opinions of

23  Dr. Danisi and Dr. Marici.

24    MR. SCHABACKER:  Your Honor, if I may.  I'm

25  sorry to interrupt you, but I believe you may be referring to

1    the wrong standard.  I believe that you're referring to the

2    standard for evidence before the Court for the first time and

3    not evidence before the appeals council for the first time.

4              THE COURT:  Well, I think my sense is that

5    that's controlled by *Lisa against Secretary of Health and*

6    *Human Services*.  There would have to be a showing of good

7    cause, which I think was demonstrated.  In your view does

8    *Lisa* not apply in this case?

9              MR. SCHABACKER:  No, Your Honor, it doesn't.

10   And part of the reason for that is that the appeals council

11   did consider this evidence.  As it states in the -- let me

12   pull up the page number for you real quick.  I apologize.  At

13   the end of the transcript rather than the beginning.  On page

14   4 of the transcript, it indicates that the appeals council

15   considered this evidence and decided that it did not provide

16   a basis for making a different decision or disturbing the

17   Commissioner's decision.

18             And, Your Honor, the relevant Second Circuit

19   cases on this are -- I apologize, I don't have the full

20   citation in front of me, but the relevant cases are *Tirado*,

21   T-I-R-A-D-O, and *Lisa*, L-I-S-A.  And if you would like me to

22   find the citations, I can do that for you very quickly.

23             THE COURT:  No.  I just mentioned *Lisa*, and I

24   also have *Tirado* before me, which is specifically referenced

25   in the Second Circuit's decision in *Pollard* as applying to

1    whether new evidence is material.  So, I guess I don't

2    understand your argument, but let me continue with my

3    decision.

4              In any event, the problem I have with the

5    Commissioner's decision is the rejection of the opinions of

6    plaintiff's treating sources.  As you know, the regulations

7    are very specific, that treating physicians concerning the

8    nature and the severity of an impairment are entitled to

9    considerable deference so long as it's supported by medically

10   acceptable clinical and laboratory diagnostic techniques and

11   not inconsistent with other substantial evidence.

12             Of course, they're not controlling if they're

13   contrary to other substantial evidence in the record,

14   including the opinions of other medical experts.  If an ALJ

15   is rejecting a treating source's opinion, the ALJ must apply

16   certain factors and determine what degree of weight to assign

17   to the opinion.  And those factors include the length of the

18   treatment, of the treatment relationship, the frequency of

19   examination, the nature and extent of the treatment

20   relationship, the degree to which the medical source

21   supported his opinion, the degree of consistency between the

22   opinion and the record as a whole, whether the opinion is

23   given by a specialist, and other evidence that may be brought

24   to his attention.  And when rejecting a treating physician's

25   opinion, the ALJ must provide reasons for the rejections.

1             In this case I don't agree that the treating

2    sources, including Dr. Danisi and Dr. Marici, are not

3    supported by substantial evidence.  Dr. Danisi followed the

4    plaintiff for her back, stated that she cannot perform even

5    sedentary work.  It appears to be supported by his records,

6    including at pages 184 through 186 and 198 of the

7    administrative transcript.  Dr. Marici gave a similar

8    assessment on July 16, 2009.  And I don't believe that those

9    opinions were rejected with the proper explanation, nor do I

10   believe that they were contrary to substantial evidence or

11   the physician's own notes.

12             I recognize that the mere fact of saying that

13   the plaintiff is disabled is a matter that is specifically

14   reserved to the Commissioner.  I understand that.  But I also

15   have RFC findings that are from those treating sources that

16   are inconsistent with the finding of the ability of the

17   claimant to perform light work.

18             I also note that Dr. Balagtas didn't

19   altogether contradict these findings in her November 20, 2008

20   consultative report.  She -- he or she, I can never remember

21   if it's a he or she -- acknowledged that there might be some

22   moderate limitations associated with plaintiff's condition

23   and didn't go any further to specify.

24             I also think that the Administrative Law Judge

25   did not reject the plaintiff's subjective complaints on a

1    proper basis.  As you know, the plaintiff may make subjective

2    complaints.  An ALJ must factor that into his or her

3    analysis.  Obviously, the ALJ is not required to accept the

4    subjective testimony of the claimant blindly but has

5    discretion on how to evaluate it.  But in doing that, the ALJ

6    has to consider a variety of factors and indicate how those

7    factors weighed in favor of or against acceptance of the

8    plaintiff's testimony.

9                In this case the claimant clearly suffers from

10   medical impairments that could reasonably be anticipated to

11   produce the level of pain she claims.  She claimed during the

12   hearing that she has pain every day, all day.  That's at

13   page 35 of the administrative transcript.  That the pain

14   radiates down both legs and down both arms.  That's at

15   page 40.  As a result she can only pick up a few pounds and

16   cannot sit for lengthy periods of time.  She did acknowledge

17   performing some household chores; she cooks, she washes

18   dishes, she does laundry, although the laundry is carried by

19   someone other than herself, she does it and folds it.

20               Obviously the ALJ took into account and has to

21   consider the plaintiff's daily activities, the location,

22   duration, frequency and intensity of her symptoms,

23   precipitating and aggravating factors, the type, dosage,

24   effectiveness and side effects of medications, other

25   treatments received and other measures taken to relieve the

1    symptoms.

2                    Plaintiff testified that she has a TENS unit.

3    She did not at one point undergo physical therapy I believe

4    for financial reasons, the record discloses.  It also

5    discloses that she is taking Topamax and Hydrocodone,

6    although she does not take the Hydrocodone except when she

7    absolutely has to.  But she did explain in the hearing that

8    that is because of the side effects, the drowsiness and

9    memory loss that she suffers from taking that medication.

10                   And I don't think that the level of daily

11   activities that she testified to, operating at the computer,

12   doing some light chores, being able to take care of herself,

13   undermine her claims of disabling pain.  So, in my view, for

14   these reasons the Commissioner's determination is not

15   supported by substantial evidence.

16                   The last question is to determine whether the

17   matter should be remanded solely for calculation of benefits

18   or whether I should find that there is persuasive proof of

19   disability and further development of the record would not

20   serve any purpose.  I make that finding in this case.  I

21   think the record clearly satisfies me that she is disabled

22   and, therefore, will reverse the Commissioner's

23   determination, direct a finding of disability and remand the

24   matter for calculation of benefits.

25                   I will issue a short form order incorporated

1    by reference, this verbal determination, which will then

2    result in the entry of judgment from which the Commissioner

3    obviously can appeal.

4                     I appreciate the excellent presentation on the

5    part of both sides, both in writing and verbally.  And

6    Mr. Schabacker, I've enjoyed working with you.  I thought

7    your argument was excellent, and I look forward to working

8    with you in the future.  As well as you, Mr. Margolius.

9                     MR. MARGOLIUS:  Thank you very much, Your

10   Honor.

11                     MR. SCHABACKER:  Thank you.

12                     THE COURT:  Thank you both.

13                            *              *        *

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N


       I, EILEEN MCDONOUGH, RPR, CRR, Official Court Reporter in and for the United States District Court, Northern District of New York, DO HEREBY CERTIFY that I attended the foregoing proceedings, took stenographic notes of the same, and that the foregoing is a true and correct transcript thereof.


_____

EILEEN MCDONOUGH, RPR, CRR
Official U.S. Court Reporter